**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| CHARLES D. DUNN and PETER M. HURM, | |
| Plaintiffs, | No. 11-CV-1001-LRR |
| vs. | **ORDER** |
| DUBUQUE GLASS COMPANY, INC. and INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 81, GLAZIERS LOCAL UNION NO. 581, | |
| Defendants. | |

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*   *PROCEDURAL HISTORY*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*  *SUBJECT MATTER JURISDICTION*. . . . . . . . . . . . . . . . . . . . . **3**

*IV.*  *SUMMARY JUDGMENT STANDARD*. . . . . . . . . . . . . . . . . . . . . **4**

*V.*   *RELEVANT FACTUAL BACKGROUND*. . . . . . . . . . . . . . . . . . . **4**
    *A.*    *Parties*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *B.*    *Collective Bargaining Agreement*. . . . . . . . . . . . . . . . . . . . **5**
    *C.*    *Wage Concerns*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

*VI.*  *ANALYSIS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
    *A.*    *FLSA and LMRA Distinction*. . . . . . . . . . . . . . . . . . . . . . . **8**
    *B.*    *Union Motion*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
        *1.*    *Statute of limitations*. . . . . . . . . . . . . . . . . . . . . . . **11**
            *a.*    *Sector wages*. . . . . . . . . . . . . . . . . . . . . . . . **11**
            *b.*    *Overtime wages*. . . . . . . . . . . . . . . . . . . . . **13**
        *2.*    *Merits*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
    *C.*    *Dubuque Glass Motion*. . . . . . . . . . . . . . . . . . . . . . . . . . **15**
        *1.*    *Count I*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
            *a.*    *Sector wages*. . . . . . . . . . . . . . . . . . . . . . . . **16**

| | | | |
|---|---|---|---|
| | *b.* | *Overtime wages* | *16* |
| *2.* | *Count II* | | *17* |
| | *a.* | *Sector wages* | *18* |
| | *b.* | *Overtime wages* | *20* |
| *3.* | *Count IV* | | *21* |
| *4.* | *Dubuque Glass Counterclaim* | | *22* |

*VII.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . *23*

## I. INTRODUCTION

The matters before the court are Defendant International Union of Painters and Allied Trades District Council 81 and Glaziers Local Union No. 581's ("Union") "Motion for Summary Judgment" ("Union Motion") (docket no. 19) and Defendant Dubuque Glass Company, Inc.'s ("Dubuque Glass") "Motion for Summary Judgment" ("Dubuque Glass Motion") (docket no. 20).

## II. PROCEDURAL HISTORY

On December 21, 2010, Plaintiffs Charles D. Dunn and Peter M. Hurm (collectively, "Plaintiffs") filed a Petition at Law ("Complaint") (docket no. 3) in the Iowa District Court for Dubuque County ("Iowa District Court"), No. LACV056913, against Dubuque Glass and the Union. Count I[1] alleges that Dubuque Glass failed to pay agreed-upon hourly sector wages and overtime wages in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207. Count II of the Complaint alleges that Dubuque Glass failed to pay agreed-upon hourly sector wages and overtime wages in violation of the Iowa Wage Payment Collection Law ("IWPCL"), Iowa Code § 91A.3.[2] Count III of

---

[1] In the Complaint, Plaintiffs each assert individual Counts I through IV. Because the legal claims made in each Plaintiff's individual counts are identical, the court analyzes the individual counts together.

[2] The parties occasionally refer to unpaid travel time in different documents within the record. Because Plaintiffs did not allege in the Complaint that Dubuque Glass failed to pay appropriate wages for travel time, the court does not address this issue.

the Complaint alleges that the Union breached its duty of fair representation in violation of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Count IV of the Complaint alleges that Dubuque Glass refused to provide employment records in violation of Iowa Code section 91A.6 and chapter 92B.

On January 19, 2011, Dubuque Glass filed an Answer (docket no. 2-1) in the Iowa District Court, denying Plaintiffs' allegations and asserting affirmative defenses. On January 20, 2011, the Union filed an Answer (docket no. 2-1) in the Iowa District Court, denying Plaintiffs' allegations and asserting affirmative defenses. On January 25, 2011, Dubuque Glass and the Union removed the action to this court on the basis of federal question jurisdiction. On August 16, 2011, Dubuque Glass filed an Amended Answer (docket no. 13), asserting additional affirmative defenses and a Counterclaim for unjust enrichment. On October 10, 2011, Plaintiffs filed an Answer (docket no. 14) to Dubuque Glass's Counterclaim.

On February 17, 2012, the Union filed the Union Motion. On February 20, 2012, Dubuque Glass filed the Dubuque Glass Motion. On March 12, 2012, Dubuque Glass filed a Response (docket no. 21) to the Union Motion. On the same date, Plaintiffs filed a Resistance (docket no. 22) to the Union Motion. On March 15, 2012, Plaintiffs filed a Resistance (docket no. 23) to the Dubuque Glass Motion. On March 19, 2012, the Union filed a Reply (docket no. 24). On March 26, 2012, Dubuque Glass filed a Reply (docket no. 25). The matters are fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has federal question subject matter jurisdiction over Count I because it arises under the FLSA and Count III because it arises under the LMRA. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over Counts II and IV because "the federal-law claims and state-law claims in

the case derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996) (alteration in the original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)) (internal quotation marks omitted).

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011), *cert. denied*, 132 S. Ct. 1144 (2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to Plaintiffs and affording them all reasonable inferences, the uncontested material facts are as follows.

### A. Parties

Dunn is a citizen of Iowa. He was employed as a journeyman glazier by Dubuque Glass from August 27, 2007, through April 6, 2010, and was a member of the Union. Hurm is a citizen of Iowa. He was employed as a journeyman glazier by Dubuque Glass from August of 2009 through April 13, 2010, and was a member of the Union.

Dubuque Glass is an Iowa corporation with its principal place of business in Dubuque County, Iowa. Union is a local affiliate of a labor organization pursuant to 29 U.S.C. § 185(a).

### B. Collective Bargaining Agreement

The terms and conditions of Plaintiffs' employment were governed by a collective bargaining agreement ("Agreement") between Dubuque Glass and the Union. Both Dunn and Hurm received a copy of the Agreement during their employment. The Agreement outlines different hourly wage rates for different geographic sectors and states that "[o]vertime shall be paid at time and one-half (1 ½ times) for all hours worked in excess of eight (8) hours in any one day and forty (40) hours in a week." Agreement, Union Appendix ("Union App'x") (docket no. 19-3) at 67. The Agreement also provides a grievance procedure for resolving disputes arising under the Agreement. The Agreement states, in relevant part:

> The parties agree that an orderly and expeditious resolution of grievances is desirable. All matters of dispute that may arise between the Employer and an employee, employees or the Union regarding a violation or interpretation of a provision of this Agreement shall be adjusted in accordance with the following procedure:
>
> Informal: An employee or the Union shall discuss a complaint or problem orally with the employer or his/her designated representative within ten (10) calendar days following its occurrence in an effort to resolve the problem in an informal manner.

Grievance Steps:

> Step 1. If the oral discussion of the complaint or problem fails to resolve the matter, the aggrieved employee or the Union shall present a grievance in writing to the employer within ten (10) calendar days following the oral discussion. Said written grievance will state the clause and section of the Agreement at issue, and shall also state the remedy requested. The Employer will answer the grievance within ten (10) calendar days.

> Step 2. Any grievance not settled in Step 1 of the grievance procedure may be referred to arbitration, provided the referral to arbitration is in writing to the other party and is made within thirty (30) calendar days after receipt of the Employer's answer in Step 1.

> All grievances must be taken up promptly. If a grievance is not presented within the time limits specified in this Article, it shall be considered waived. If a grievance is not appealed to the next step within the specified time limits, it shall be considered settled on the basis of the Employer's last answer. If a grievance is not timely answered by the Employer, it may automatically be referred to the next step.

Agreement, Union App'x at 82.

## C. *Wage Concerns*

During his employment with Dubuque Glass, Dunn performed work in different geographic sectors, including Wisconsin and Cedar Falls, Iowa. Dunn received paychecks that he believed did not reflect the applicable hourly wage rate for these geographic sectors, and he complained to Ben Steuer, a Dubuque Glass representative. Steuer stated that he would discuss Dunn's concerns with Tim Greenfield, another Dubuque Glass representative. Dunn also called his Union business agent, Larry Grafton, and stated that he thought he was being paid incorrect sector wages. Grafton responded that he would

"look into it." Dunn Deposition, Union App'x at 34. Dunn did not hear anything more regarding his sector wage complaint, and he did not pursue the issue further.

Subsequently, in November of 2009, Dunn received a check that he believed did not include earned overtime wages. Dunn discussed his overtime pay concerns with Grafton, and Grafton stated that he would "look into it." *Id.* at 24. After receiving another check that he believed did not reflect his earned overtime wages, Dunn spoke with Grafton again. Grafton told Dunn, "I'm still looking into it. We'll look into it again." *Id.* at 25. Dunn did not have any further communication with Grafton about his overtime pay. By the end of 2009, Dunn determined that Grafton was not going to help him. Dunn never asked the Union to file a grievance on his behalf regarding his overtime pay or sector pay while he was a Dubuque Glass employee, and the Union never filed a grievance on his behalf. For the Union to file a grievance with an employer, the Union must have a named grievant. Additionally, Dunn did not file a grievance with Dubuque Glass on his own regarding either his sector pay or his overtime pay while he was employed at Dubuque Glass.

Between 2009 and 2010, Hurm received paychecks that he believed did not reflect all of the overtime he worked. Hurm tried to call Grafton four or five times about his overtime pay concerns, but he was unable to reach Grafton and never left a message. Around the end of 2009, Hurm also believed that he had not been paid the applicable geographic sector wages for jobs he performed in other sectors, including Wisconsin. Hurm contacted Grafton to ask what the hourly rate was for a certain sector, but he did not contact Grafton regarding his sector wage payment concerns. Hurm did not think he needed to contact Grafton because Dunn was contacting Grafton about these concerns. Hurm thought Dunn had filed a grievance and stated that he would have filed a grievance had he known that Dunn did not file one. Hurm never asked the Union to file a grievance on his behalf while he was employed at Dubuque Glass, and the Union did not file a grievance on his behalf. Additionally, Hurm never filed a grievance regarding either his

sector pay or overtime pay while he was employed at Dubuque Glass.

The employees' paychecks showed the hourly rate and amount earned, and employees were aware of different sector rates and overtime rates. Therefore, employees would be aware of any underpayment with each paycheck.

After he was laid off in April of 2010, Dunn called Dubuque Glass to obtain a copy of his employment record. Dubuque Glass told Dunn it could not provide him with the information. In May of 2010, Plaintiffs contacted Grafton to discuss the request for records that Dubuque Glass denied. Dunn subsequently asked Grafton if he needed to hire a lawyer, and Grafton told Dunn that it would be in his best interest to do so. On July 7, 2010, attorney Jason Lehman contacted Grafton on Dunn's behalf and requested wage and benefit breakdowns for different geographic sectors. Grafton provided Lehman with the requested information.

On September 2, 2010, Plaintiffs' attorney, Erik Fisk, called Grafton to discuss whether the Union would aid Plaintiffs in their claims against Dubuque Glass. On September 3, 2010, Grafton told Fisk that the Union could not assist Plaintiffs because their grievance was not timely. On the same date, Fisk sent Grafton a letter asking him to reconsider his decision not to assist Plaintiffs with their claims. Fisk also sent Greenfield a letter on the same date stating Plaintiffs' claims for overtime and sector pay and requesting personnel records pursuant to Iowa Code section 92B.1. Dubuque Glass did not provide Plaintiffs with their employment records until discovery in the instant action.

## VI.  ANALYSIS

### A.  FLSA and LMRA Distinction

As an initial matter, Plaintiffs claim in Count I that Dubuque Glass's failure to pay the appropriate sector rate was a violation of the FLSA. While a claim for unpaid overtime is an appropriate cause of action under 29 U.S.C. § 207, a claim for incorrect

sector wage compensation is not appropriate under the FLSA. Thus, regarding their sector wages claims, Plaintiffs have not stated claims upon which relief can be granted under the FLSA. "To establish a violation of the minimum wage requirements of the FLSA[, 29 U.S.C. § 206], a plaintiff . . . must demonstrate that he was engaged in compensable activity within the meaning of the statute and that the wages received for that activity, if any, were below the statutory minimum wage." *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 355 (8th Cir. 1986). "[N]o violation occurs 'so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.'" *Id.* (quoting *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960)). Both sector rates listed in the Agreement, $23.67 per hour and $21.28 per hour, are well above the statutory minimum of $7.25 per hour. Therefore, even if Dubuque Glass paid Plaintiffs the lower sector wage, it would not violate the FLSA's minimum wage requirements. Thus, Plaintiffs cannot state a claim for sector wages under the FLSA.

Plaintiffs' sector wage claims are based upon provisions of the Agreement, however, and can be brought under LMRA § 301, 29 U.S.C. § 185, for breach of the Agreement's hourly wage terms. The LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Plaintiffs already claim that the Union breached its duty of fair representation under the LMRA. Based on the nature of Plaintiffs' sector wage claims, the court finds it appropriate to characterize Plaintiffs' sector wage claims as § 301 claims for breach of the Agreement. *See Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 265-66 (3d Cir. 1990) (finding that a plaintiff's claim that he was paid the wrong rate under a collective bargaining agreement was not proper under the FLSA because "the FLSA contains no language suggesting that an action filed

9

thereunder would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement" and noting that "[t]he enforcement provision of the FLSA is limited to employee suits seeking enforcement of their rights under the statute"); *see also Humphrey v. Moore*, 375 U.S. 335, 343-44 (1964) (finding that an employee's action against an employer and a union arose under the LMRA, even though the action was brought in state court because the complaint alleged the breach of a labor contract); *Hillard v. Dobelman*, 774 F.2d 886, 887 (8th Cir. 1985) (per curiam) (finding that an action brought in tort that failed to mention the LMRA was actually a suit for breach of the collective bargaining agreement and should be analyzed under LMRA § 301). The different congressional purposes behind the FLSA and the LMRA support this conclusion:

> The principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours . . . . In contrast to the [LMRA], which was designed to minimize industrial strife and to improve working conditions by encouraging employees to promote their interests collectively, the FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive [a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay.

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (third alteration in original) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)) (emphasis removed) (internal quotation marks omitted). Thus, because Plaintiffs' claims for particular wages under the Agreement do not implicate minimum wage standards covered by the FLSA, the court treats Plaintiffs' sector wage claims in Count I as LMRA claims for breach of the Agreement.

### B. Union Motion

In the Union Motion, the Union argues that it did not breach its duty of fair

representation and that any claim for a breach of that duty is barred by the statute of limitations for a hybrid action against an employer and a union.

In their Resistance to the Union Motion, Plaintiffs argue that they proved sufficient facts to demonstrate that they exhausted the Union grievance procedure to the best of their abilities. Plaintiffs further argue that further action under the grievance procedure would have been futile and that their failure to exhaust is excused. Plaintiffs did not respond to the Union's statute of limitations argument.

### 1. *Statute of limitations*

The statute of limitations for bringing a hybrid claim against an employer for a violation of LMRA § 301 and against a union for breach of the duty of fair representation is six months. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983). "[A] hybrid claim is one in which the employee has a cause of action against both the union and the employer, the two actions are 'inextricably interdependent,' and the case to be proven is the same whether the employee sues the employer, the union, or both." *Livingstone v. Schnuck Mkt., Inc.*, 950 F.2d 579, 582 (8th Cir. 1991) (quoting *DelCostello*, 462 U.S. at 164-65). The statute of limitations begins to run on a hybrid claim "when a claimant knows, or should know through an exercise of reasonable diligence, of the acts constituting the alleged violation." *Alcorn v. Burlington N. R.R. Co.*, 878 F.2d 1105, 1108 (8th Cir. 1989); *see also Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 (8th Cir. 1983) (finding that a hybrid cause of action against an employer and a union "accrued when the union decided not to pursue appellant's grievance"). In contrast, the statute of limitations for a FLSA claim is two years. *See* 29 U.S.C. § 255(a).

### a. *Sector wages*

As discussed above, Plaintiffs' sector wages claims are properly characterized as

LMRA § 301 claims for breach of the Agreement.[3] "Because most collective-bargaining agreements accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee normally cannot bring a § 301 action against an employer unless he can show that the union breached its duty of fair representation in handling its grievance." *Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990). "Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation." *Id.* Thus, to recover from the Union on their sector wages claims, Plaintiffs must demonstrate that Dubuque Glass breached the Agreement by violating the sector wage provisions and that the Union violated its duty of fair representation. Accordingly, the court finds that Plaintiffs' sector wages claims are hybrid § 301/duty of fair representation claims, and the court applies the six-month statute of limitations to Plaintiffs' sector wages claims.

Dunn first complained about the wage amounts in his paychecks in November of 2009. Dunn further admitted that, by the end of 2009, he was aware that Grafton would no longer help him with a grievance against Dubuque Glass. *Cf. Alcorn*, 878 F.2d at 1108 (finding that the plaintiffs' "knowledge of the [union's] refusal to pursue their complaints . . . constitutes knowledge of the alleged violation of the duty to initiate a grievance/arbitration procedure, and that knowledge triggered the beginning of the limitations period"). Dunn's employment with Dubuque Glass ended on April 6, 2010.

---

[3] Even if the court treated Plaintiffs' sector wages claims as FLSA claims, the court would nonetheless apply the six-month statute of limitations. *See Martin v. Lake Cnty. Sewer Co., Inc.*, 269 F.3d 673, 679 (6th Cir. 2001) (holding that the six-month statute of limitations applied to a plaintiff's purported FLSA claim that his employer did not pay him the hourly wage contained in a collective bargaining agreement because the claim relied "on an interpretation of the terms of the underlying [collective bargaining agreement]").

Hurm first became aware of problems with his paycheck in late 2009. Hurm's employment with Dubuque Glass ended on April 13, 2010. At that point, approximately three months had passed since Hurm had any contact with the Union.

Plaintiffs filed the Complaint on December 21, 2010. Therefore, Plaintiffs' cause of action must have accrued after June 21, 2010, to come within the statute of limitations. Both Dunn and Hurm knew of the acts constituting the alleged violation by late 2009 because their paychecks showed whether they received the correct wages. Furthermore, Dunn knew that the Union would no longer pursue the grievance by the end of 2009, and Hurm knew or should have known by the time he left his employment with Dubuque Glass that the Union was no longer pursuing his complaint. Thus, both parties knew or should have known that the Union was no longer pursuing the grievance well before June 21, 2010. Therefore, the court finds that Plaintiffs' claims against the Union for breach of the duty of fair representation regarding sector wages are time-barred by the six-month statute of limitations.

### b. *Overtime wages*

As discussed below, because Plaintiffs' overtime wages claims are based on statutory rights independent from the rights outlined in the Agreement, Plaintiffs' claims against the Union regarding overtime wages are not subject to the six-month statute of limitations. Instead, the court will apply the two-year FLSA statute of limitations to Plaintiffs' overtime wages claims. Plaintiffs filed the Complaint on December 21, 2010. At the earliest, Plaintiffs' claims accrued in late 2009. Accordingly, Plaintiffs' claims against the Union for breach of the duty of fair representation regarding overtime wages are timely.

### 2. *Merits*

Despite the timeliness of Plaintiffs' claims against the Union regarding overtime wages, none of Plaintiffs' claims against the Union for breach of the duty of fair

representation succeed on the merits.

"A union has exclusive bargaining rights under a [collective bargaining agreement], and federal law places a duty on it to represent fairly all the workers covered by such an agreement." *Gaston v. Teamsters Local 600, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 614 F.3d 774, 778 (8th Cir. 2010). "The duty of fair representation is breached if the union's conduct is 'arbitrary, discriminatory, or in bad faith.'" *Id.* (quoting *Smith v. United Parcel Serv., Inc.*, 96 F.3d 1066, 1068 (8th Cir. 1996)). "Mere negligence, poor judgment or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation." *Id.* "For a union's conduct to be arbitrary it must be 'so far outside a "wide range of reasonableness" as to be irrational.'" *Id.* (quoting *Washington v. Serv. Emps. Int'l Union Local 50*, 130 F.3d 825, 826 (8th Cir. 1997)). "A showing of bad faith requires proof of 'fraud, deceitful action, or dishonest conduct.'" *Id.* (quoting *Washington*, 130 F.3d at 826). "Unions are afforded considerable deference in executing their duty of fair representation." *Id.*

The undisputed facts show that the Union business agent, Grafton, told Dunn he would look into Dunn's concerns regarding his overtime and sector wages pay. Hurm did not speak to Grafton regarding his concerns and did not leave any messages for Grafton. Neither Dunn nor Hurm asked Grafton to file a grievance regarding their wage concerns. When Plaintiffs' attorney sent Grafton a letter on September 3, 2010, requesting that the Union assist Plaintiffs with their claims against Dubuque Glass, Grafton stated that the Union could not assist because the Agreement requires a grievance to be filed within ten days of the oral discussion regarding the problem.

There is no evidence that Grafton engaged in fraud, deceitful action or dishonest conduct. *See id.* Additionally, the record does not show that Grafton's actions were so unreasonable as to be irrational. *See id.* The evidence shows that Plaintiffs did not ask Grafton to pursue a grievance on their behalf until well after the time period for filing a

grievance under the Agreement had passed and that Grafton declined to pursue the written grievance because it was untimely. *Cf. Vaca v. Sipes*, 386 U.S. 171, 191 (1967) (stating that "a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion" but concluding that there was no absolute right to have a claim proceed to arbitration "regardless of the provisions of the applicable collective bargaining agreement"); *Ethier v. USPS*, 590 F.2d 733, 736-37 (8th Cir. 1979) (finding that a union did not breach its duty of fair representation when an arbitrator found that a grievance was untimely and noting that the reasons for the union's actions were "clearly set forth" in the record). While Grafton's initial failures to follow up with Plaintiffs may show negligence or ineptitude, they do not show the arbitrariness or bad faith required for a breach of the duty of fair representation. *See Gaston*, 614 F.3d at 778. Thus, the court shall grant the Union Motion.[4] The court shall, therefore, dismiss Count III of the Complaint.

## C. Dubuque Glass Motion

In the Dubuque Glass Motion, Dubuque Glass argues that the court should grant it summary judgment because: (1) Plaintiffs failed to exhaust their administrative or contractual remedies; (2) Plaintiffs' state law claims are preempted by federal law; (3) even if state law applies, Plaintiffs cannot prove any violation or harm; and (4) Plaintiffs cannot show any violation of the FLSA or the LMRA. Dubuque Glass also asks the court to grant it all amounts requested under its Counterclaim against Plaintiffs.

Plaintiffs argue that (1) their FLSA claims for overtime wages are not preempted; (2) they have established claims for unpaid sector wages that are not preempted by federal law, and, if federal law does apply, any grievance would have been futile or the failure to

_____

[4] The court finds it unnecessary to address Plaintiffs' exhaustion arguments because they are irrelevant to the statute of limitations and merits issues. Assuming Plaintiffs exhausted their contractual remedies when the Union refused to pursue an untimely grievance, Plaintiffs' claims nonetheless fail on either the statute of limitations defense or the merits.

comply with the grievance procedure would have been excused; (3) they have established an Iowa law claim for failure to turn over employee records; and (4) Defendant did not cite any facts or authorities in support of its Counterclaim, and summary judgment on the Counterclaim is therefore not appropriate. The court will address the parties' arguments as to each remaining count in Plaintiffs' Complaint.

### 1. Count I

In Count 1, Plaintiffs claim that Dubuque Glass failed to pay appropriate sector wages and overtime wages in violation of the FLSA. Dubuque Glass argues that the grievance procedure in the Agreement governed Plaintiffs' claims, and a grievance by Plaintiffs under the Agreement is now untimely.

#### a. Sector wages

As discussed above, the court treats Plaintiffs' sector wages claims as LMRA claims for breach of the Agreement. Thus, Plaintiffs' LMRA claims against Dubuque Glass are barred by the six-month statute of limitations for hybrid LMRA § 301/duty of fair representation claims. *See DelCostello*, 462 U.S. at 155 (holding that the six-month statute of limitations applies to the hybrid claims against the union and the employer). Thus, the court shall grant the Dubuque Glass Motion to the extent that it seeks dismissal of Plaintiffs' federal unpaid sector wages claims. The court shall dismiss Count I to the extent it addresses Plaintiffs' sector wages claims.

#### b. Overtime wages

Plaintiffs' claims for overtime wages are properly brought under the FLSA. The FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. "While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the

collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Barrentine*, 450 U.S. at 737. "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* at 740 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

Plaintiffs have a statutory right to overtime wages under the FLSA independent of their rights under the Agreement. Plaintiffs and Dubuque Glass genuinely dispute whether Plaintiffs received proper overtime payments for work performed in addition to their regular forty-hour work week. Viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have established that there is a genuine issue of material fact regarding their overtime pay. Specifically, Plaintiffs aver that Dubuque Glass did not pay overtime wages for hours worked in excess of forty hours during certain weeks and rely on Dubuque Glass time sheets to demonstrate their overtime hours worked. *See* Dunn and Hurm's Combined Response to Dubuque Glass's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment and Statement of Additional Material Facts to Which There Is No Dispute (docket no. 23-2) at 2. Because these claims are not barred by the FLSA's two-year statute of limitations and there is a genuine issue of material fact regarding the merits of these claims, the court shall deny the Dubuque Glass Motion to the extent it requests dismissal of Plaintiffs' FLSA overtime wages claims under Count I.

### 2. *Count II*

In Count II, Plaintiffs claim that Dubuque Glass violated the IWPCL by failing to pay overtime and sector wages. Dubuque Glass argues that Plaintiffs' state law claims are preempted by federal law and Plaintiffs cannot prove any violation or harm. Plaintiffs argue that their claims under the IWPCL are not preempted because their claims are based

on rights independent of those in the Agreement and do not require interpretation of the Agreement. Plaintiffs also argue that, if their IWPCL claims are preempted, any grievance would have been futile or the failure to comply with the grievance procedure would have been excused.[5]

### a.    *Sector wages*

The IWPCL states that "[a]n employer shall pay all wages due its employees." Iowa Code section 91A.3. Section 301 of the LMRA "expresses a congressional policy that federal labor law should govern § 301 disputes." *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1341 (8th Cir. 1989). Thus, "in an action alleging a violation of a term of a labor contract, federal labor law preempts any local law purporting to define the meaning or delineate the scope of a labor contract provision." *Id.* at 1341-42. To determine whether § 301 preemption applies, the court starts with "'the claim itself.'" *Williams v. NFL*, 582 F.3d 863, 874 (8th Cir. 2009) (quoting *Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006)). The court then applies a two-step approach "to determine if the claim is sufficiently 'independent' to survive section 301 preemption." *Id.* (quoting *Bogan v. Gen. Motors Corp.*, 500 F.3d 828, 832 (8th Cir. 2007)). "First, a state-law claim is preempted if it is based on [a] . . . provision of the [collective bargaining agreement][,] meaning that [t]he [collective bargaining agreement] provision at issue actually sets forth the right upon which the claim is based." *Id.* (first, third and fourth alterations in original) (quoting *Bogan*, 500 F.3d at 832) (internal quotation marks omitted). "Second, section 301 preemption applies where a state-law claim is dependent upon an analysis of the relevant [collective bargaining agreement], meaning that the plaintiff's state-law claim requires interpretation of a provision of the [collective bargaining agreement]." *Id.* (quoting

---

[5] The court does not address Plaintiffs' exhaustion defenses because they are not relevant to the controlling issues regarding Count II.

*Bogan*, 500 F.3d at 832) (internal quotation marks omitted).

Plaintiffs cite *Dyke v. Hormel Foods Corp.*, No. 3:11-cv-03029-JAJ, 2012 WL 113738 (N.D. Iowa Jan. 13, 2012), in support of their argument that the Plaintiffs' rights under the IWPCL are independent of the Agreement, and that their sector wages claims are not preempted by federal law because the court need only consult the Agreement to determine damages. In *Dyke*, the plaintiffs alleged that their employer had not paid them for all the hours they had worked. *Id.* at *5. The United States District Court for the Northern District of Iowa concluded that the IWPCL claims for unpaid wages were not preempted because the court could determine the plaintiffs' IWPCL unpaid wages claims without interpreting the collective bargaining agreement, and the court only needed to reference the collective bargaining agreement to determine damages. *Id.* at *5-6.

Dubuque Glass argues that the Agreement creates Plaintiffs' right to sector wages and, therefore, Plaintiffs' IWPCL claims fall under the first prong of the preemption test. Dubuque Glass further argues that Plaintiffs' IWPCL claims require interpretation of the sector wages provisions of the Agreement, and, therefore, the second prong of the preemption test is also satisfied.

The court agrees with Dubuque Glass's arguments. The instant action regarding sector wages differs from *Dyke* because the plaintiffs in *Dyke* claimed that their employer failed to pay them for all the hours they worked. *Id.* at *5. In their claim regarding sector pay, however, Plaintiffs do not argue that Dubuque Glass failed to pay them for all the hours they worked. Rather, they argue that Dubuque Glass did not pay them the proper geographic sector amounts pursuant to the Agreement. Plaintiffs' right to a particular hourly sector wage is set forth in the Agreement. *See Williams*, 582 F.3d at 874 (a state law claim is preempted if the collective bargaining agreement "actually sets forth the right upon which the claim is based"). Thus, Plaintiffs' IWPCL sector wages claims fulfill the first prong of the preemption test.

Additionally, Plaintiffs' IWPCL claims regarding sector wages would require the court to interpret the sector wages provisions of the Agreement to determine whether Plaintiffs were entitled to particular hourly sector wages. *Cf. Martin v. Lake Cnty. Sewer Co., Inc.*, 269 F.3d 673, 679 (6th Cir. 2001) (finding that a claim for particular hourly wages in a collective bargaining agreement required interpretation of the terms of the agreement); *Vadino*, 903 F.2d at 266 (same). Unlike situations where the court need only reference a collective bargaining agreement to determine damages, in this case the court must interpret the sector wages provisions of the Agreement to determine whether Plaintiffs are entitled to particular wages in different locations. Thus, Plaintiffs' IWPCL sector wages claims fulfill the second prong of the preemption test.

Because Plaintiffs' IWPCL claims regarding sector wages satisfy both prongs of the preemption test, these claims are preempted by the LMRA. Accordingly, the court shall grant the Dubuque Glass Motion to the extent that it requests dismissal of Plaintiffs' IWPCL claims regarding sector wages. The court shall dismiss Count II to the extent that it addresses Plaintiffs' sector wages claims.

### b. *Overtime wages*

As discussed above, Plaintiffs' FLSA rights regarding overtime wages are independent from the rights created by the Agreement. Additionally, Plaintiffs' IWPCL claims regarding overtime wages do not require interpretation of any provisions of the Agreement. As in *Dyke*, the provisions in the Agreement are only relevant to the issue of damages. *See Dyke*, 2012 WL 113738, at *5. Reference to the Agreement for this limited purpose does not support preemption. *See id.* Therefore, LMRA § 301 preemption does not apply to Plaintiffs' overtime wages claims.

As discussed above, Plaintiffs have demonstrated a genuine issue of material fact regarding whether they received overtime wages for the overtime hours that they worked. Thus, the court shall deny the Dubuque Glass Motion to the extent that it requests

dismissal of Plaintiffs' IWPCL claims regarding overtime wages under Count II.

### 3. Count IV

Plaintiffs argue that Dubuque Glass violated Iowa Code sections 91A.6 and 91B.1 by failing to comply with Plaintiffs' requests for their personnel files. Plaintiffs argue that the duty to provide personnel records extends beyond an employee's termination date. Defendants rely on the definition of the term "employee" under the Iowa Code and argue that Plaintiffs were no longer employees under the Iowa Code definition when they requested their employment records, and, therefore, Dubuque Glass did not have a duty to provide the records under Iowa law.

Iowa Code section 91B.1 states that "[a]n employee, as defined in section 91A.2, shall have access to and shall be permitted to obtain a copy of the employee's personnel file . . . including but not limited to performance evaluations, disciplinary records, and other information concerning employer-employee relations." Iowa Code § 91B.1(1). Section 91A.2 defines an employee as "a natural person who is employed in this state for wages by an employer." *Id.* § 91A.2(3). Iowa Code section 91A.6 provides:

> Within ten working days of a request by an employee, an employer shall furnish to the employee a written, itemized statement or access to a written, itemized statement . . . listing the earnings and deductions made from the wages for each pay period in which the deductions were made together with an explanation of how the wages and deductions were computed.

*Id.* § 91A.6(3).

In support of their argument, Plaintiffs point to Iowa Code section 91A.14, which states: "The rights and obligations outlined in this chapter continue until they are fulfilled, even though the employer-employee relationship has been severed." *Id.* § 91A.14. Plaintiffs maintain that, because section 91B.1 adopts the definition of "employee" from section 91A.2, section 91A.14 applies by reference to section 91B.1.

In *Muller v. Hotsy Corp.*, 917 F. Supp. 1389, 1421 (N.D. Iowa 1996), the court

considered whether an employer was required to provide a former employee with a copy of his personnel file pursuant to chapter 91B. *Id.* The court held that, under the plain language of section 91A.2, the plaintiff was not an "employee" because "at the time he requested his personnel file, he was no longer 'employed in this state by an employer.'" *Id.* at 1422 (quoting Iowa Code § 91A.2(3)). The court in *Muller* also determined that, because the employer provided the employee files through discovery and the employee suffered no damages as a result of the employer's initial denial, the issue was moot. *Id.*

The court agrees with the reasoning in *Muller*. Because Plaintiffs were not employees under the statute at the time they requested records under section 91B.1, the statute's provisions did not apply to them. *See id.* Therefore, Dubuque Glass did not have a duty to provide records to Plaintiffs. Because Plaintiffs were not employees within the meaning of the statute, relief under section 91A.6 is also not warranted. Furthermore, Dubuque Glass provided the employment files to Plaintiffs through discovery, and there is no evidence that Dubuque Glass's initial refusal to produce the records damaged Plaintiffs. Therefore, the issue is moot. *See id.* Thus, the court shall grant the Dubuque Glass Motion to the extent that it requests dismissal of Count IV.

### 4. *Dubuque Glass Counterclaim*

In the Dubuque Glass Motion, Dubuque Glass asks the court to grant all relief that it requests in its Counterclaim. Plaintiffs argue that Dubuque Glass has not produced any facts or authority to support summary judgment on its Counterclaim, and summary judgment is therefore not appropriate. In their Answer, Plaintiffs deny Dubuque Glass's allegations in the Counterclaim. Because Dubuque Glass has failed to make any showing that it is entitled to summary judgment on its Counterclaim, the court shall deny the Dubuque Glass Motion to the extent that it requests summary judgment on Dubuque Glass's Counterclaim.

## VII. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) The Union Motion for Summary Judgment (docket no. 19) is **GRANTED**. The clerk's office is **DIRECTED** to dismiss Count III, that is, Plaintiffs' claims pertaining to the Union's duty of fair representation;

(2) The Dubuque Glass Motion (docket no. 20) is **GRANTED IN PART** and **DENIED IN PART**. The clerk's office is **DIRECTED** to dismiss Plaintiffs' sector wages claims with respect to Count I and Count II. The clerk's office is also **DIRECTED** to dismiss Count IV, that is, Plaintiffs' claims pertaining to request for employment records. Plaintiffs' overtime wages claims with respect to Count I and Count II survive summary judgment and will proceed to trial;

(3) The Dubuque Glass Counterclaim survives summary judgment and will proceed to trial.

**DATED** this 1st day of May, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA